IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

ISAAC CLEVELAND,                    *

    Plaintiff,                  *

vs.                                 *        CASE NO. 3:06-CV-108 (CDL)

GREENE COUNTY SCHOOL DISTRICT,      *

    Defendant.                  *

                                *

_____

O R D E R

This action arises from Plaintiff's failure to obtain a promotion when he applied for two vacant principal positions with his employer, Defendant Greene County School District. Plaintiff contends that he was not chosen because of his race, in retaliation for his complaints of race discrimination, and for previously filing an age discrimination claim against Defendant. Defendant filled the two positions with persons whom it found to be better qualified than Plaintiff. Plaintiff seeks relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 25). For the following reasons, the Court grants Defendant's motion.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

1

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.*

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court resolves "all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his . . . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from

2

undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (internal quotation marks omitted).

FACTUAL BACKGROUND

## I.   Plaintiff's Background

Plaintiff Isaac Cleveland is a former executive and business owner who has been an educator with Defendant Greene County School District since 1997.   After earning a degree in business administration in 1969, Plaintiff served in the United States Army and then obtained a master's degree in management science from Case Western Reserve University.   Even before beginning his formal career in education, Plaintiff worked with students through educational programs such as Junior Achievement.   (Def.'s Statement of Material Undisputed Facts [hereinafter, Def.'s SOF] ¶¶ 1-3; Pl.'s Resp. to Def.'s SOF ¶¶ 1-3.)

In 1997, Plaintiff accepted a position with Defendant as Youth Apprenticeship Coordinator.   In this capacity, Plaintiff supervised and placed students in jobs with various businesses and organizations within the community.   Although the parties dispute the extent of his teaching authority and duties, it appears that Plaintiff taught some vocational classes while serving as the Youth Apprenticeship Coordinator.[1]   (Def.'s SOF ¶¶ 3-6; Pl.'s Resp. to Def.'s SOF ¶¶ 3-6.)

_____

[1]Defendant contends that Plaintiff did not need a teaching certificate to teach "Workplace Readiness," a course not offered as part of the academic core curriculum and the single class taught by Plaintiff. (Def.'s SOF ¶¶ 5, 6.)   Plaintiff contends that he taught two courses,

In 1998, Plaintiff obtained a "provisional" teaching certificate in the field of business education from the Georgia Professional Standards Council.  Plaintiff had three years from the issuance of his provisional certificate to complete the educational course work required to obtain a "clear renewable" teaching certificate. Plaintiff obtained this certificate in 2002, and he continued serving as Youth Apprenticeship Coordinator while he obtained a "leadership" certificate which would enable him to apply for administrative positions.  (Def.'s SOF ¶¶ 7-12.)

Plaintiff received his leadership certification in August of 2002, and in September of 2002, he was offered a position as Assistant Principal of Greensboro Elementary School.  (Def.'s SOF ¶ 13; Pl.'s Resp. to Def.'s SOF ¶ 13.)  In March of 2004, Plaintiff applied for the position of principal at Greene County High School. Plaintiff was not selected for this position, and he filed a charge of discrimination with the EEOC contending that he was not selected for the position due to his age.  The lawsuit terminated on December 12, 2005.[2]  (Def.'s SOF ¶ 28.)

---

"Workplace Readiness" and "Entrepreneurship" which were approved as part of the Georgia Quality Core Curriculum and for which students received elective course credit.  (Pl.'s Resp. to Def.'s SOF ¶¶ 5, 6.)

[2]The March 2004 Greene County High School position is only relevant to this case to the extent Plaintiff contends that he was retaliated against for pursuing an EEOC charge and lawsuit relating to the position.

## II.  The Contested Positions

> A.  The Union Point Elementary School Principal Position for the 2005-2006 School Year

In the spring of 2005, Dr. John Jackson, the first black superintendent in the Greene County School District, sought to fill the position of Union Point Elementary School principal.  Dr. Jackson decided to utilize the Union Point Elementary School Council, an advisory board composed of five white members and one black member, to help him evaluate candidates.  The School Council contained two parent representatives, two business partners, and two school employees.  Dr. Jackson and the School Council met to determine selection criteria and to determine the timeline and procedures for the selection process.  Dr. Jackson and the School Council met again to screen applications, determine which candidates to interview, and formulate interview questions.  Plaintiff was selected to interview for the Union Point position.  (J. Jackson Aff. ¶ 14, Apr. 10, 2008.)

After the initial interviews, the School Council recommended two white male candidates for further interview; however, both candidates decided not to accept the position.  (*Id.*)  Dr. Jackson averred that both white male candidates were "far more qualified" than Plaintiff, that Plaintiff's interview performance was "exceptionally weak," and that the two classroom teachers on the School Council "express[ed] particular concern about [Plaintiff's] lack of instructional background and experience."  (*Id.*)  Dr. Jackson subsequently reopened the position to new applicants, but Dr. Jackson and the School

5

Council chose not to interview Plaintiff again because of his poor performance during his first interview.   The School Council ultimately recommended Judy Marable, a white female, for the Union Point position.  (*Id.* ¶ 15.)  In turn, Dr. Jackson recommended Ms. Marable to the Board of Education, which then approved his recommendation and hired Ms. Marable.

   B.   The Greene County High School Principal Position for the 2006-2007 School Year

   In 2005, Bonnie Morrison succeeded Dr. Jackson as superintendent.  In spring of 2006, Ms. Morrison sought to fill the position of Greene County High School Principal.  Plaintiff applied for the position.  Ms. Morrison used a larger committee to assist her in interviewing candidates for the Greene County position.  Including Morrison, the committee consisted of six white and five black members (Morrison Aff. ¶ 3, Apr. 7, 2008.)  After Ms. Morrison screened the applications and formulated a list of questions for the applicants, the committee interviewed twelve applicants, including Plaintiff. (Def.'s SOF ¶ 45.)  The committee selected one white male candidate for a second interview, but it also asked to interview two more candidates.  (*Id.* ¶ 46.)  Based on this final interview, the committee unanimously recommended Dr. Michael Ashmore, a black male, for the position.  (*Id.* ¶ 47.)  Ms. Morrison recommended Dr. Ashmore to the Board of Education, and the Board approved his hiring.  Ms. Morrison averred that "Dr. Ashmore was significantly more qualified for the position than [Plaintiff] based on his administrative

6

experience at the High School level, as well as his doctoral degree and higher certification level." (Morrison Aff. ¶ 5.) Additionally, Ms. Morrison felt that "Dr. Ashmore's performance at the interview was much better than [Plaintiff's] in the area of curriculum and instruction." (*Id.* ¶ 6.)

### III. Plaintiff's Claims

Plaintiff first asserts two retaliation claims under Title VII, contending that he "engaged in statutorily protected expression by filing a civil rights lawsuit and EEOC charges as well as opposing employment practices he reasonably thought to be unlawful under Title VII." (Compl. ¶ 22.) As a result of this activity, Plaintiff contends that he "suffered two adverse employment actions, i.e. being rejected for the position of principal at Union Point Elementary School and, thereafter, being rejected for the position of principal at Greene County High School." (*Id.* ¶ 23.)

In addition, Plaintiff claims that Defendant's failure to hire him for the Union Point Elementary School principal position was unlawfully based upon his race in violation of Title VII. (Compl. ¶¶ 27-33.) Plaintiff also asserts claims under 42 U.S.C. § 1983, alleging that during the course of his employment, he spoke out against racial discrimination in the school system, and as a result, Defendant refused to promote Plaintiff to the principal positions in Greene County High School and Union Point Elementary School. (Compl.

7

¶¶ 35-42.)  For the following reasons, Defendant is entitled to summary judgment as to each of Plaintiff's claims.

DISCUSSION

**I.  Abandoned Claims**

    A.  <u>Title VII Retaliation</u>

Plaintiff first brings a Title VII retaliation claim, contending that Defendant's failure to select him for either the Union Point or the Greene County positions was retaliatory.  More specifically, Plaintiff alleges that he was retaliated against for "filing a civil rights lawsuit and EEOC charges as well as opposing employment practices he reasonably thought to be unlawful under Title VII." (Compl. ¶ 22.)  Title VII clearly prohibits retaliation for such activity.  *See, e.g., Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a)).  A plaintiff alleging a claim of retaliation under Title VII must prove each element of a prima facie case: (1) he engaged in activity protected under Title VII; (2) he suffered an adverse employment action; and (3) a causal connection existed between the adverse employment action and the protected activity.  *Id.*  An adverse employment action includes a failure to hire.  *See id.*

In briefing, Plaintiff acknowledged that while his "non-selection for the Greene County position may have given rise to a retaliation claim, [Plaintiff], through counsel, informed opposing counsel that he probably would not proceed on that part of the

8

lawsuit involving the Greene County High School selection." (Pl.'s Resp. Br. to Def.'s Mot. for Summ. J. 6 [hereinafter Pl.'s Resp.].) Plaintiff does not specifically argue in his brief that Defendant retaliated against him for engaging in statutorily-protected activity with respect to *either* the Greene County position *or* the Union Point position.  A party may not simply rest on his pleadings to avoid summary judgment, and "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *cf. Reese v. Herbert*, 527 F.3d 1253, 1268-69 (11th Cir. 2008) (observing that when a summary judgment motion is unopposed or when a party fails to file a response to the movant's statement of material facts, a district court may properly limit its review of the record to those materials submitted in support of the motion).  Instead, "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp.*, 43 F.3d at 599; *see also McIntyre v. Eckerd Corp.*, 251 F. App'x 621, 626 (11th Cir. 2007) (holding that district court did not err in concluding that because plaintiff failed to argue a claim in response to defendant's motion for summary judgment, she abandoned that claim).  Because Plaintiff has failed to direct the Court to evidence sufficient to permit a reasonable finder of

fact to find in his favor on his Title VII retaliation claims, Defendant is entitled to summary judgment as to those claims.

B.   Section 1983 Claims

In his Complaint, Plaintiff also asserts that Defendant violated his federally protected rights and is liable under 42 U.S.C. § 1983. Under this provision,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Specifically, Plaintiff contends that after he exercised his First Amendment rights by speaking out against racial discrimination within the school district, Defendant retaliated against him by refusing to hire or promote him.  Just as with his Title VII retaliation claims, Plaintiff fails to provide any response whatsoever to Defendant's motion for summary judgment on his § 1983 claim.  Accordingly, Defendant is entitled to summary judgment as to Plaintiff's § 1983 claim. *See, e.g., Resolution Trust Corp.*, 43 F.3d at 599; *McIntyre*, 251 F. App'x at 626.

**II.  Disparate Treatment: Failure to Hire or Promote**

The sole claim argued by Plaintiff in response to Defendant's motion for summary judgment is that Defendant did not hire him for the Union Point Elementary School position despite the relative

10

superiority of his qualifications.[3]   Plaintiff contends that Defendant's failure to hire him was based on his race and that the reasons Defendant gave for Plaintiff's rejection were a pretext for racial discrimination.  (*See* Compl. ¶¶ 27-33.)

A.   Title VII Framework

To prevail on his claims, Plaintiff must ultimately prove "that discriminatory animus was a determinative factor in the adverse employment decision" at issue.  *See, e.g., Palmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 208 F.3d 969, 974 (11th Cir. 2000).  A plaintiff may bear this burden by producing either direct or circumstantial evidence of racial discrimination.  *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (per curiam).  Plaintiff in this case acknowledges that no direct evidence of discrimination exists. (Pl.'s Resp. 13.)  Thus, because Plaintiff relies solely upon circumstantial evidence to support his claims, the Court applies the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *See, e.g., Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993).

---

[3]The ultimate candidate selected for the Union Point principal position was vetted by three sets of decisionmakers.  First, the candidates were interviewed by the School Council, who recommended a "short list" of candidates for further interview by then-superintendent Dr. Jackson.  After Dr. Jackson conducted those in-depth interviews, he recommended one candidate for approval by the Board of Education.  The Board of Education would then vote whether to approve Dr. Jackson's selection.  It is unclear which of these decisionmakers Plaintiff contends acted with discriminatory intent.

To prevail under the *McDonnell Douglas* framework, a plaintiff must first create an inference of discrimination by establishing a prima facie case. *E.g., Goldsmith*, 996 F.2d at 1163. A plaintiff may establish a prima facie case of race discrimination by demonstrating that (1) he belongs to a racial minority; (2) he was subjected to adverse employment action; (3) the employer treated similarly-situated employees outside his class more favorably; and (4) he was qualified to do the job. *E.g., Crawford*, 529 F.3d at 961.

Once the plaintiff sets out a prima facie case, a presumption of discrimination arises, and the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's conduct. *Goldsmith*, 996 F.2d at 1163. If the employer successfully rebuts the plaintiff's prima facie case, the presumption of discrimination is eliminated, and the plaintiff must then show that the reasons offered by the employer are pretextual or present other evidence to show that discriminatory intent was the cause of the employer's action. *Id.* If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the employer's reasons are pretextual, the employer is entitled to summary judgment on plaintiff's claims. *Id.*

B. <u>Analysis of Plaintiff's Claims</u>

For purposes of the present motion for summary judgment only, Defendant does not challenge the existence of Plaintiff's prima facie case. (Def.'s Mot. for Summ. J. Br. 11.) Instead, Defendant

12

contends that Plaintiff cannot establish that Defendant's legitimate, nondiscriminatory reasons for failing to hire Plaintiff were merely pretextual.

      1.   *Defendant's Legitimate, Nondiscriminatory Reason*

An employer bears the burden of articulating a legitimate, nondiscriminatory reason for failing to hire a particular employee. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). This burden "is a burden of production, not of persuasion," and because it involves no credibility determination, "it has been characterized as 'exceedingly light.'" *Id.* at 769-70 (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983)). Defendant articulates two legitimate, nondiscriminatory reasons for declining to hire Plaintiff: (1) the qualifications of the candidates ultimately selected were superior to those of Plaintiff and (2) Plaintiff's performance during the employment interview was inferior to that of the candidates ultimately selected. It is clear that Defendant's proffered reasons are legitimate and nondiscriminatory in nature. *See, e.g., Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (characterizing defendant's proffered reasons for hiring the successful candidate—"superior qualifications" and experience—as legitimate and nondiscriminatory).

13

### 2.   Plaintiff's Evidence of Pretext

Because Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for its actions, the burden shifts to Plaintiff to produce "evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels*, 408 F.3d at 771. "This evidence must reveal 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" *Id.* (quoting *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)).   To withstand summary judgment, a plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks*, 446 F.3d at 1163 (internal quotation marks omitted).   "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Id.*   (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

### i.   QUALIFICATIONS

Plaintiff's primary contention is that his qualifications were so superior to those of the successful candidates that no reasonable person would have offered those candidates the Union Point position.

When attempting to refute an employer's assertion that its legitimate nondiscriminatory reason for failing to hire or promote a plaintiff was the plaintiff's inferior qualifications, a "plaintiff must show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks*, 446 F.3d at 1163 (quoting *Cooper*, 390 F.3d at 732)).

Each of the three candidates who was offered the Union Point position had qualifications comparable, and arguably superior, to those of Plaintiff.[4]  Mr. Grimes, Mr. Channell, and Ms. Marable each possessed a level-6 teaching certificate compared with Plaintiff's level-5 certificate.  Mr. Grimes, Mr. Channell, and Ms. Marable had each earned educational specialist degrees in educational leadership, while Plaintiff had attained only a master's Degree in management science.[5]  Mr. Grimes had seven years of teaching experience and six years of administrative experience; Mr. Channell had eleven years of teaching experience and eight years of administrative experience; and Ms. Marable had twenty years of teaching experience and four years of

---

[4]Three candidates were offered the Union Point position.  After the preliminary round of interviews, Defendant offered the position to two white males, Robert Grimes and Mark Channell.  After both men declined to accept the position, Dr. Jackson reopened the position and conducted new interviews.  Judy Marable, who had not originally applied for the position, was recommended by Dr. Jackson, approved by the Board of Education, and accepted the position.

[5]A Specialist in Education degree is a self-contained degree program intermediate between a master's degree and a doctoral degree.

administrative experience.[6]  In comparison, Plaintiff had five years of teaching experience and three years of administrative experience. (Ex. J. to J. Jackson Aff.)  The Court simply cannot say that any disparity between the qualifications of the successful candidates and Plaintiff's own is sufficient to create a genuine issue of material fact regarding pretext.

Moreover, Dr. Jackson specifically cited Plaintiff's poor interview performance as a primary factor in his decision not to recommend Plaintiff to the Board of Education or re-interview Plaintiff after reopening the Union Point position.  Dr. Jackson recalls that Plaintiff's "interview was exceptionally weak even though by this time he had almost three years of administrative experience." (Jackson Aff. ¶ 14.)  Plaintiff "was completely unable to respond to one of the interview questions related to instruction" and "was unable to answer adequately" another interview question. (*Id.*)  Dr. Jackson found that "[t]he two classroom teachers on the School Council express[ed] particular concern about [Plaintiff's] lack of instructional background and experience" and attested that "their views were important considerations in my own decisionmaking

---

[6]Plaintiff contends that Ms. Marable "had never been an administrator in . . . an elementary school." (Pl.'s Resp. 19.)  Ms. Marable had served as an administrator in a primary school, which serves children from kindergarten to second grade.  Union Point Elementary School served children from kindergarten through fifth grade.  However, Ms. Marable had an elementary school certification, which authorized her to work with children from pre-kindergarten through fifth grade.  Ms. Morrison testified that there is no difference between a primary school certification and an elementary school certification. (Morrison Dep. 25:5-7, Feb. 26, 2008.)

process." (*Id.; see also id.* ¶ 15 (Jackson and the School Council "did not re-interview [Plaintiff] even though he submitted his application again for this position . . . because of his performance at the first interview.").) Plaintiff directs the Court to no evidence to rebut Dr. Jackson's affidavit, except for his own opinion regarding his interview performance. *See, e.g., Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998) ("The pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs."); *see also Holifield*, 115 F.3d at 1565 (finding that "where the employer produces . . . documentary evidence . . . that demonstrate[s] poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence").[7]

In sum, Plaintiff has failed to direct the Court to evidence in the present record supporting the conclusion that no reasonable person under the circumstances would have selected the successful candidates over Plaintiff. Thus, the disparity between Plaintiff's qualifications and those of the successful candidates is not sufficient to create a genuine issue of material fact regarding pretext.

---

[7]Plaintiff directs the Court to no evidence suggesting that Dr. Jackson did not, in fact, base his decision on his honest assessment that Plaintiff performed poorly during the interview or the successful candidates' superior qualifications. *See Standard*, 161 F.3d at 1333 ("The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the [adverse employment action] but whether the employer really was motivated by those reasons.").

ii.   OTHER EVIDENCE OF PRETEXT

Plaintiff also contends that the record is replete with other evidence of pretext including: (1) Dr. Jackson's "significant" modification of the selection process (Pl.'s Resp. 17); (2) the fact that the School Council was rendered a "nullity" because its members were informed that they did not have a substantial say in the selection process (*Id.* at 18); (3) the racial composition of the majority-white School Council (*Id.* at 19); and (4) the pervasive attitude that Greene County should not hire a black principal (*Id.*).[8] Plaintiff's contention is not supported by the present record.

### a.   Modification of Selection Process

Plaintiff first argues that the selection process for the Union Point position was significantly modified.  The record establishes that after initially interviewing the candidates, the School Council would generally recommend three candidates to the superintendent for further in-depth interviews, school visits, and reference checking. (*See* Ex. H to Jackson Aff., Proposed Selection Process.)  It is undisputed that in this case, the School Council recommended only two candidates for the Union Point position.  Plaintiff contends that School Council member Kevin Jackson told him that he had been ranked third after the initial interviews but that Dr. Jackson told the School Council to recommend only two candidates for further

---

[8]Plaintiff also contends that Ms. Marable's lack of qualifications and the fact that he was not re-interviewed for the position after two white candidates rejected their offers are further evidence of pretext. Plaintiff's contentions are addressed in section II.B.2.i., *supra*.

interview.  (Pl.'s Dep. 80:24-81:8, Feb. 19, 2008.)  Thus, Plaintiff theorizes, Dr. Jackson's modification of the selection process is evidence of pretext.

Plaintiff's theory is unsupported by the present record.  Kevin Jackson testified that he could not recall being asked to narrow the field of candidates down to a specific number; likewise, he could not recall where Plaintiff fell within the ranking of candidates, and he also did not remember ever speaking to Dr. Jackson or Ms. Morrison after the interview process. (K. Jackson Dep. 29:16-30:21, Feb. 19, 2008.)  The record also suggests that it was the School Council's decision, and not Dr. Jackson's, to recommend two candidates instead of three. (*See* J. Jackson Aff. ¶ 14.)

Moreover, other evidence indicates that Defendant's selection process was hardly set in stone.  For example, Kevin Jackson testified that the School Council would narrow the candidate field "to at least two or three," and he did not notice anything unusual about the number of candidates recommended for the Union Point position. (K. Jackson Dep. 29:24-30:6.)  Former administrator Bonnie Morrison, who was involved in both the Union Point and Greene County selection processes, testified that "usually no more than three" candidates remained after the School Council narrowed the list of initial candidates. (Morrison Dep. 20:11-13, Feb. 26, 2008.)  On this record, the Court cannot conclude that the selection process was modified to such an extent that it would support a finding of pretext.

**b.      Role of the School Council**

Plaintiff next contends that the School Council's role was minimized during the Union Point interview process because Defendant "completely went around the [School Council] selected to interview the candidates, rendering the [Council] a nullity." (Pl.'s Resp. 18.) Plaintiff cites School Council member Kevin Jackson's testimony in support of this contention:

> Well, from my understanding, the role was that the school council members that was able to make it to the interview, was to sit back and just kind of observe. They let us know up front that we wouldn't really have no say-so of whether they were going to get hired or not. It was mostly just to sit in and just to kind of give them input and output on different things.

(K. Jackson Dep. 10:16-23.) However, Jackson's testimony is entirely consistent with evidence in the record establishing that the School Council's role was simply to make recommendations to the superintendent, who in turn would select one candidate to recommend to the Board of Education. (*See* Exs. A, C, F, H to J. Jackson Aff.) Jackson's testimony is also consistent with Georgia law, which provides that the Board of Education is the only entity permitted to hire principals. O.C.G.A. § 20-2-211(a) ("All . . . principals . . . of a local unit of administration shall be employed and assigned by its governing board on the recommendation of its executive officer."). Plaintiff's allegation that the role of the School Council was altered or minimized is thus unsubstantiated by the record and is not evidence of pretext.

20

### c.   Composition of the School Council

Plaintiff next contends that the racial composition of the School Council is evidence of pretext.  At the time of the Union Point selection process, the School Council consisted of five white members and one black member.[9]  (J. Jackson Aff. ¶ 13.)  Plaintiff directs the Court to no evidence of how the racial composition of the School Council affected its recommendations.  Kevin Jackson, the only member of the School Council whose deposition is contained in the present record, could not remember how the other School Council members rated Plaintiff; in fact, Kevin Jackson could not remember anything anyone said about Plaintiff during the interview process. (K. Jackson Dep. 20:23-21:9; 23:10-15.)  Plaintiff additionally fails to direct the Court to record evidence rebutting Dr. Jackson's affidavit, which explains that members of the School Council were concerned about Plaintiff's poor interview performance.  (J. Jackson Aff. ¶¶ 14, 15.)  Thus, the mere composition of the School Council does not create a genuine factual issue as to whether the legitimate, nondiscriminatory reason for failing to hire Plaintiff was pretextual.  *See Vessels*, 408 F.3d at 772 (finding that the plaintiff's "focus on the panelists' overall racial composition fails to raise genuine factual issues as to whether the panelists' critique

---

[9]Dr. Jackson, who made the Union Point recommendations to the Board of Education, is black, and the Board which ultimately hired Ms. Marable was composed of two black and three white members.  (J. Jackson Aff. ¶ 16.)

of his excessive focus on problems was a pretext for racial preference").

### d.   Atmosphere of Racial Discrimination

Finally, Plaintiff contends that "the entire attitude, often spoken and endlessly implied, was that the school district did not want 'another African-American principal.'" (Pl.'s Resp. 19.)   In support of this contention, Plaintiff again cites the testimony of Kevin Jackson.   Mr. Jackson testified that he did not feel that Plaintiff's candidacy for the Union Point position was given full consideration because he had heard that the school district "didn't want another Black principal." (K. Jackson Dep. 35:5-13.)   Mr. Jackson offered no factual basis for this conclusion, however. Instead, he testified that "no specific person" made this comment and that he had never heard any specific statements that he believed reflected a race bias within the school district. (K. Jackson Dep. 29:8-15; 31:14-23; *see also id.* at 24:7-21.)   Furthermore, Mr. Jackson testified that he never overheard Dr. Jackson or Ms. Morrison make any such statements. (*Id.* at 24:22-25-11.)   Thus, even if a racially discriminatory attitude pervaded Greene County, Plaintiff has not directed the Court to evidence that the decisionmakers in this case were impermissibly motivated by it.

In sum, even when viewing the totality of the evidence Plaintiff proffers in the light most favorable to him, Plaintiff has failed to direct the Court to sufficient evidence in the record from which a reasonable factfinder could conclude that the decision not to hire

Plaintiff was based on his race.  Plaintiff's evidence of pretext is largely conclusory and unsupported by the record.  "[C]onclusory allegations of discrimination, without more, are insufficient to raise an inference of pretext or intentional discrimination where a defendant has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Lightsey v. Potter*, 268 F. App'x 849, 851 (11th Cir. 2008) (per curiam).  In the absence of evidence suggesting pretext, the Court will not second-guess the hiring decisions made by Defendant. *See, e.g., Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (per curiam) (noting that inquiry into "whether a business decision is wise or nice or accurate—is precluded" by Eleventh Circuit authority).  Accordingly, Defendant is entitled to summary judgment as to Plaintiff's disparate treatment claims.

CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment (Doc. 25) in its entirety.


IT IS SO ORDERED, this 19th day of November, 2008.


                                    S/Clay D. Land
                                    CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE